UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>*EX PARTE* APPLICATION OF EVGENY VOLOSOV FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782<br><br>Applicant. | Case No. 1:25-mc-00186-JGK |

## MEMORANDUM OF LAW IN SUPPORT OF AMENDED *EX PARTE* APPLICATION OF EVGENY VOLOSOV FOR AN ORDER UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM STANDARD CHARTERED BANK, NEW YORK BRANCH

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

Kristin Tahler
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Nicholas J. Inns (*pro hac vice* forthcoming)
1300 I Street NW, Suite 900
Washington, D.C. 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Counsel for Applicant Evgeny Volosov*

Dated: May 28, 2025

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

    A.    Parties............................................................................................................................2

    B.    Relevant Non-Parties ...................................................................................................2

    C.    The Contemplated U.K. Proceeding ...........................................................................3

REQUESTED DISCOVERY ...........................................................................................................4

ARGUMENT ....................................................................................................................................5

    A.    The Application Meets the Statutory Requirements of Section 1782......................5

        1.    Standard Chartered "Resides" or Is "Found" In the Southern District of New York ...........................................................................................6

        2.    The Discovery Applicant Seeks Is "For Use" in a Foreign Proceeding..................................................................................................7

        3.    Applicant Is an "Interested Person" ............................................................8

    B.    The *Intel* Discretionary Factors Weigh in Favor of Granting the Application.................................................................................................................8

        1.    The First *Intel* Factor Favors Granting Discovery Because Standard Chartered Would Not Be a Participant in the Pending Proceeding....................................................................................................9

        2.    The Second *Intel* Factor Favors Granting Discovery Because Courts in United Kingdom Are Receptive to U.S. Federal Court Judicial Assistance .......................................................................................10

        3.    The Third *Intel* Factor Favors Granting Discovery Because the Application Does Not Circumvent Foreign Proof-Gathering Restrictions ...................................................................................................11

        4.    The Fourth *Intel* Factor Favors Granting Discovery Because the Requests Are Narrowly Tailored and Proportional to the Needs of the Foreign Proceeding .............................................................................11

CONCLUSION................................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
  785 F. Supp. 2d 434 (S.D.N.Y. 2011) ...................................................................................6

*In re Application of 000 Promneftstroy for an Order to Conduct Discovery for use
  in a Foreign Proceeding*,
  134 F. Supp. 3d 789 (S.D.N.Y. 2015).....................................................................................9

*Application of Esses*,
  101 F.3d 873 (2d Cir. 1996)....................................................................................................6

*In re BNP Paribas Jersey Tr. Corp. Ltd. for an Order Pursuant to 28 U.S.C.
  §1782 to Conduct Discovery for Use in Foreign Proceedings*,
  2018 WL 895675 (S.D.N.Y. Feb. 14, 2018)...........................................................................9

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019)....................................................................................................6

*Euromepa, S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995)..................................................................................................10

*In re Furstenberg Fin. SAS*,
  785 F. App'x 882 (2d Cir. 2019) ............................................................................................8

*In re Golden Meditech Holdings Ltd.*,
  2024 WL 5247285 (S.D.N.Y. Dec. 30, 2024) ........................................................................6

*Gorsoan Ltd. v. Bullock*,
  652 F. App'x 7 (2d Cir. 2016) ................................................................................................9

*Gushlak v. Gushlak*,
  486 F. App'x 215 (2d Cir. 2012) .......................................................................................5, 9

*In re Hornbeam Corp.*,
  722 F. App'x 7 (2d Cir. 2018) ................................................................................................7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)........................................................................................................ *passim*

*Application of Malev Hungarian Airlines,*
  964 F.2d 97 (2d Cir. 1992)....................................................................................................12

*In re Man Grp. Ltd.*,
   2025 WL 294277 (S.D.N.Y. Jan. 24, 2025) ..................................................................10

*In re Marinakis*,
   2025 WL 696769 (S.D.N.Y. Feb. 21, 2025), *report and recommendation
   adopted*, 2025 WL 693147 (S.D.N.Y. Mar. 4, 2025) ....................................................7

*In re Martinez,*
   2024 WL 5402058 (S.D.N.Y. Nov. 1, 2024) ..................................................................6

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ....................................................................................7, 12

*In re O'Keeffe*,
   650 F. App'x 83 (2d Cir. 2016) ................................................................................9, 11

*In re Safra*,
   2022 WL 3584541 (S.D.N.Y. Aug. 22, 2022) ..............................................................10

*In re Tel. Media Grp. Ltd.*,
   2023 WL 5770115 (S.D.N.Y. Sept. 6, 2023) ............................................................. 1fe

## **Statutes**

28 U.S.C. § 1782 ............................................................................................................. *passim*

Fed. R. Civ. P. 4(k)(1)(A) ........................................................................................................6

Fed. R. Civ. P. 26 .................................................................................................................12

Applicant Evgeny Volosov ("Applicant") respectfully submits this Memorandum of Law in support of his amended *ex parte* Application (the "Application") pursuant to 28 U.S.C. § 1782 ("Section 1782") for an Order authorizing him to obtain limited discovery from Standard Chartered Bank, New York Branch ("Standard Chartered") for use in a contemplated civil proceeding that Applicant anticipates filing in the United Kingdom (the "Contemplated U.K. Proceeding") in the form of the subpoena *duces tecum* attached to the Second Declaration of Nicholas J. Inns ("Inns Decl.") as Exhibit 5 being filed concurrently herewith.

## PRELIMINARY STATEMENT

Applicant anticipates bringing a civil proceeding against Vasily Trubnikov ("Trubnikov") to recover sham payments Hunan Minmetals Antimony and Titanium Limited ("Hunan Minmetals"), an entity of which Applicant is a principal, made to entities, on information and belief, controlled by Trubnikov. Applicant seeks documents and records related to payments made to Southern Logistics and Charter (PTY) LTD ("Southern Logistics"), North Global Shipping Import and Export Trade Limited Company ("North Global"), and South Logistic Shipping Import and Export Trade Limited Company ("South Logistic") (the "Requested Discovery"). These payments went through Standard Chartered and relate to Applicant's contemplated claims against Trubnikov. Applicant seeks the Requested Discovery in order to demonstrate that Trubnikov was not entitled to the payments and wrongfully obtained the funds.

As demonstrated in detail below, the Application meets each of Section 1782's statutory requirements, and the discretionary factors considered by courts in determining whether to grant relief under Section 1782 weigh in favor of granting the Application. Accordingly, the Application should be granted.

1

## FACTUAL BACKGROUND

A.  **Parties**

*Evgeny Volosov.*  Applicant is involved in the mining industry.  Second Declaration of Melis Acuner ("Acuner Decl.")) ¶ 3.  Applicant anticipates bringing a claim for rescission on the basis of duress against Trubnikov in the United Kingdom.  *Id.* ¶¶ 15-17.

**Standard Chartered Bank, New York Branch.**  Standard Chartered provides financial products and services to multi-national corporations, financial institutions and development organizations.  Inns Decl. Ex. 1.  Standard Chartered Bank's global headquarters is in the United Kingdom.[1]  Standard Chartered is located at 1095 Avenue of the Americas, New York, NY 10036.  Inns Decl. Ex. 1.  At least 18 payments relevant to the Contemplated U.K. Proceeding went through Standard Chartered to entities, on information and belief, controlled by Trubnikov.  Inns Decl. Exs. 2-4.

B.  **Relevant Non-Parties**

*Vasily Trubnikov.*  Trubnikov served as a consultant on loading operations to mining businesses owned by Applicant.  Acuner Decl. ¶ 3.

**Hunan Minmetals Antimony and Titanium Limited**.  Hunan Minmetals is a trading business engaged in minerals and metals.  Acuner Decl. ¶ 5.  It has at all material times been wholly owned by Vardan Muradyan.  *Id*.

*Vardan Muradyan*. Muradyan is the owner of Hunan Minmetals.  Acuner Decl. ¶ 5.  He is a close business associate of Applicant.  *Id*.

---

[1]  Our locations, Standard Chartered, https://www.sc.com/en/our-locations/ (last visited May 19, 2025).

2

***Southern Logistics and Charter (PTY) LTD***, ***North Global Shipping Import and Export Trade Limited Company***, and ***South Logistic Shipping Import and Export Trade Limited Company***.  On information and belief, Southern Logistics, North Global, and South Logistic are entities controlled by Trubnikov.  Acuner Decl. ¶ 12.

***Julimar Hong Kong.***  Julimar Hong Kong was incorporated under the laws of Hong Kong.  Acuner Decl. ¶ 9.  Trubnikov owns 50% of the shares of Julimar Hong Kong.  *Id*.

### C. The Contemplated U.K. Proceeding

Trubnikov provided services to Applicant's mining businesses as a consultant assisting with the execution of loading operations.  Acuner Decl. ¶ 3.  Beginning in 2021, Trubnikov executed the loading operations in his capacity as director of E&N Mozambique.  *Id.* ¶ 4.

In mid-October 2023, Trubnikov demanded that Muradyan execute a contract whereby Hunan Minmetals would pay Southern Logistics $22,379,000 pursuant to a purported construction project.  *Id.* ¶ 5.  Trubnikov also demanded that Muradyan execute a separate contract whereby a different company owned by Trubnikov (Global Charter and Transportation Inc.) would be paid $21,800,660, also for a purported construction project.  *Id*.  Muradyan declined to execute either contract.  *Id*.  Trubnikov later called Applicant about the contracts, and Applicant—who suspected that the contracts were an attempt by Trubnikov to siphon money away from his mining business—also declined to execute the contracts.  *Id*.

On October 26, 2023, Trubnikov emailed Applicant and Muradyan with demands related to an upcoming shipment of minerals.  *Id.* ¶ 6.  Specifically, his demands included that $150,000,000 be declared in dividends in favor of Applicant and Trubnikov, the latter of which had no ownership interest in the company.  *Id*.  Trubnikov threatened to prevent the loading of minerals onto the vessel, which would cause Hunan Minmetals to breach its charterparty for the vessel and contractual obligations to end-buyers.  *Id*.  On October 30, 2023, Applicant responded

3

and declined to meet Trubnikov's demands. *Id.* ¶ 7. On November 2, 2023, Trubnikov prevented the loading of minerals onto the vessel for shipment. *Id.* ¶ 8. Trubnikov's actions caused losses Hunan Minmetals. *Id.*

Given the circumstances, on November 7, 2023, Applicant sent an email to Trubnikov proposing to purchase Trubnikov's shares in Julimar Hong Kong if Trubnikov withdrew from the project and resigned as a consultant to the mining businesses. *Id.* ¶ 9. The next day, Trubnikov rejected Applicant's proposal and threatened to continue blocking the loading of the minerals for shipment. *Id.* Trubnikov then insisted that Applicant, on behalf of one of his companies, execute a shareholders' agreement acceding to Trubnikov's earlier extortionate demands ("Shareholders' Agreement"). *Id.* Applicant responded the same day with proposed changes to the Shareholders' Agreement. *Id.* By November 11, 2023, in order to prevent further losses from the delayed shipment and under duress, Applicant executed the Shareholders' Agreement as originally drafted by Trubnikov. *Id.* ¶ 10. After the Shareholders' Agreement was executed, Trubnikov allowed the loading operations to resume. *Id.* ¶ 11.

Trubnikov received $15,395,043 between November 24 and December 21, 2023 in payments from Hunan Minmetals. *Id.* ¶ 11. On information and belief, the payments were made pursuant to (i) sham contracts between Hunan Minmetals and North Global, (ii) a sham contract between Hunan Minmetals and Southern Logistics, and (iii) a sham invoice issued by South Logistic to Hunan Minmetals. *Id.* ¶ 13. These payments went through Standard Chartered in the United States. *Id.* ¶ 14; Inns Decl. Exs. 2-4.

## REQUESTED DISCOVERY

In order to more fully develop the facts relevant to Applicant's anticipated claim in the Contemplated U.K. Proceeding, Applicant seeks information and documents relating to payments Hunan Minmetals made to North Global, Southern Logistics, and South Logistic (the "Three

4

Entities") from Standard Chartered. Acuner Decl. ¶ 21. Applicant seeks information about transfers to and from the Three Entities' bank accounts, including transaction information for all deposits and withdrawals that passed through Standard Chartered since January 1, 2023 ("**Requested Discovery**"). Inns Decl. Ex. 5. The Requested Discovery would be used to demonstrate that Trubnikov received payments to which he was not entitled. Acuner Decl. ¶ 22. Applicant anticipates using any discovery obtained through the Application (i) to add to his allegations in the Contemplated U.K. Proceeding and (ii) as evidence to prove his case in the Contemplated U.K. Proceeding. *Id.* ¶ 23.

## ARGUMENT

Applicant respectfully submits that this Court should issue an order granting the Application, which (1) meets the statutory requirements set forth in Section 1782; and (2) is supported by the discretionary factors established by controlling case law.[2] Granting the Application will serve Section 1782's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to [U.S.] courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004) (quotations omitted).

### A.     The Application Meets the Statutory Requirements of Section 1782

The Application meets each of the requirements set forth in Section 1782. Specifically, Section 1782 requires "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use

---

[2] This Court routinely entertains *ex parte* applications pursuant to Section 1782. *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."). This is because an opposing party may move to quash a subpoena issued pursuant to a Section 1782 application, preserving its due process rights. *See id.*

in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or 'any interested person.'" *Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996).

        1.    <u>Standard Chartered "Resides" or Is "Found" In the Southern District of New York</u>

Under the first statutory requirement, an entity "resides or is found" in a district if a court can exercise personal jurisdiction over it. *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) ("resides or is found language extends to the limits of personal jurisdiction consistent with due process"). This Court has personal jurisdiction over Standard Chartered because its United States headquarters is located in the Southern District of New York at 1095 Avenue of the Americas, New York, NY 10036. *See* Fed. R. Civ. P. 4(k)(1)(A); *see also* Inns Decl., Ex. 1; *In re Golden Meditech Holdings Ltd.*, 2024 WL 5247285, at *3 (S.D.N.Y. Dec. 30, 2024) (holding that Standard Chartered is "at home" in the Southern District of New York because it is "headquartered" there). Additionally, this District has found specific personal jurisdiction over Standard Chartered in cases involving Section 1782 applications. *See In re Martinez,* 2024 WL 5402058, at *2 (S.D.N.Y. Nov. 1, 2024) (finding specific personal jurisdiction when the "material sought consist[ed] of transactions where the New York branch [of Standard Chartered Bank] was the sending, ordering, beneficiary, or intermediary bank—all of which is material that proximately results from Standard Chartered Bank, New York Branch's contacts with this district"); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("All of the respondents have offices and do business in Manhattan and thus 'reside' in the Southern District of New York."). On information and belief, based on the SWIFT code associated with the payments Hunan Minmetals made to the Three Entities, "SCBLUS33XXX," some or all of the payments went through Standard Chartered Bank, New

6

York Branch.  Inns Decl. Exs. 2 at 2–6; 3 at 6, 8, 13, 14; 4 at 2.  Specifically, the "33" in "SCBLUS33XXX" means New York.  Inns. Decl. ¶ 9.

In *In re Marinakis,* 2025 WL 696769 (S.D.N.Y. Feb. 21, 2025), *report and recommendation adopted*, 2025 WL 693147 (S.D.N.Y. Mar. 4, 2025), the applicant sought "records of U.S.-denominated wire transfers routed through New York City" from Standard Chartered Bank USA.  *Id*. at *4.  The court found a "nexus" between Standard Chartered Bank USA's forum contacts and the records of wire transactions conducted by Standard Chartered Bank USA sought through the Section 1782 application.  *Id*.  The court found specific jurisdiction over Standard Chartered Bank USA and permitted the applicant to seek certain discovery to use in a civil proceeding pending in the United Kingdom.  *Id*.

Standard Chartered thus is "found" in the Southern District of New York, satisfying this statutory requirement.

        2.       The Discovery Applicant Seeks Is "For Use" in a Foreign Proceeding

Under the second statutory requirement, if material will be "used at some stage of a foreign proceeding that [is] within reasonable contemplation," the material is "for use" in the foreign proceeding.  *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015).  Applicant anticipates bringing a civil proceeding against Trubnikov in the United Kingdom to recover payments made pursuant to sham contracts.  Acuner Decl. ¶¶ 13, 21.  The Contemplated U.K. proceeding is within reasonable contemplation because Applicant has developed a legal theory upon which he anticipates litigating.  *In re Hornbeam Corp.*, 722 F. App'x 7, 10 (2d Cir. 2018) (foreign proceeding in reasonable contemplation when applicant "articulated a theory on which it intended to litigate").  Applicant would assert a case for rescission of the sham contracts on the basis of duress.  Acuner Decl. ¶¶ 16-17.  Trubnikov threatened Applicant's economic interests by interfering with the operations of Applicant's mining business, which constituted illegitimate pressure that deprived Applicant of

7

any practical alternative but to enter into the sham contracts. *Id.* ¶ 18. In order to more fully develop the facts relevant to Applicant's anticipated claim and show that Trubnikov received payments to which he was not entitled, Applicant seeks information about the transfer of funds pursuant to the sham contracts. *Id.* ¶¶ 21-22. Thus, the discovery Applicant seeks from Standard Chartered is "for use" in a proceeding within reasonable contemplation. *See In re Furstenberg Fin. SAS*, 785 F. App'x 882, 885 (2d Cir. 2019) ("well-documented assertions . . . outlining the basis of [the applicants'] intended . . . complaint pending receipt of the evidence sought" through the Section 1782 application was sufficient to show reasonable contemplation of the suit).

        3.        Applicant Is an "Interested Person"

Under the third statutory requirement, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceeding. Although Section 1782 broadly covers those with the right to participate and submit evidence in a foreign proceeding, there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782[.]" *Intel*, 542 U.S. at 256. Applicant would be the plaintiff in the Contemplated U.K. Proceeding and is, therefore, an "interested person" under Section 1782.

**B.    The *Intel* Discretionary Factors Weigh in Favor of Granting the Application**

The discretionary factors set out by the Supreme Court in the *Intel* decision also weigh in favor of granting the Application. These factors include: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is otherwise

"unduly intrusive or burdensome." *Intel,* 542 U.S. at 264-65; *see also In re O'Keeffe,* 650 F. App'x 83, 85 (2d Cir. 2016); *Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012).

    1. <u>The First *Intel* Factor Favors Granting Discovery Because Standard Chartered Would Not Be a Participant in the Pending Proceeding</u>

"The first [*Intel*] factor asks the Court to evaluate whether the documents or testimony sought by the application are within the foreign tribunal's jurisdictional reach, and thus accessible without resort to § 1782." *In re Application of 000 Promneftstroy for an Order to Conduct Discovery for use in a Foreign Proceeding*, 134 F. Supp. 3d 789, 792 (S.D.N.Y. 2015). Courts in this Circuit typically find that this factor is satisfied where the target of discovery is not a party to the underlying litigation. *See Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016) ("Indisputably, Remmel, Smith, and RIGroup are not parties to the Cyprus proceedings, and so the first *Intel* factor weighs in favor of discovery against them."); *In re BNP Paribas Jersey Tr. Corp. Ltd. for an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in Foreign Proceedings*, 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018) (holding first *Intel* factor weighed "in favor of granting" application because target was "not a participant in the foreign proceeding, so it is not within the jurisdictional reach" of that court). Applicant intends to bring the Contemplated U.K. Proceeding against Trubnikov, and Standard Chartered would not be a party to the Contemplated U.K. Proceeding. Acuner Decl. ¶¶ 15,20. The English Civil Procedure Rules provide a limited scope for obtaining disclosure from third parties. *Id*. ¶ 20. On information and belief, the Requested Discovery is located in the United States, not the United Kingdom. *Id*. There is uncertainty as to whether the U.K. court's power to obtain disclosure from third parties would extend to a party outside the jurisdiction, especially where the documents themselves are located outside the jurisdiction. *Id*. In addition, the English Civil Procedure Rules provide only a limited scope to seek pre-action disclosure, which generally applies only where the party from whom

9

disclosure is sought would be likely to be a party to the relevant anticipated proceedings, and where the documents sought would be able to be obtained by way of the disclosure process in any such proceedings. *Id*. Thus, there is a reasonable likelihood that Requested Discovery would be unobtainable in the Contemplated U.K. Proceeding, and the first *Intel* factor weighs in favor of granting the Application.

> 2. The Second *Intel* Factor Favors Granting Discovery Because Courts in United Kingdom Are Receptive to U.S. Federal Court Judicial Assistance

Under the second *Intel* factor, courts examine "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Another nation's limit on discovery "within its domain for reasons peculiar to its own legal practices, culture, or traditions . . . do[es] not necessarily signal objection to aid from United States federal courts." *Id*. at 261. There is a strong presumption that the foreign tribunal will be receptive to evidence obtained in the United States, with the Second Circuit holding that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery for lack of receptiveness only when provided with "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id*. at 1100; *see also In re Safra*, 2022 WL 3584541, at *5 (S.D.N.Y. Aug. 22, 2022) ("[O]bjection to U.S. federal-court judicial assistance would have to come from an official source, such as an agent of the [foreign] government.").

Courts in this District have found that "there is ample evidence that courts in the United Kingdom are receptive to . . . assistance with discovery under Section 1782." *In re Man Grp. Ltd.*, 2025 WL 294277, at *3 (S.D.N.Y. Jan. 24, 2025) (quotations omitted); *see also In re Tel. Media*

*Grp. Ltd.,* 2023 WL 5770115, at *8 (S.D.N.Y. Sept. 6, 2023) (holding that "second *Intel* factor weigh[ed] in favor of" applicant when foreign proceeding was pending in the United Kingdom); Acuner Decl. ¶¶ 24-25 ("Courts in the United Kingdom are generally receptive to discovery of relevant evidence properly obtained through an application under 28 U.S.C. § 1782."). The second *Intel* factor weighs in favor of granting the Application.

       3.      <u>The Third *Intel* Factor Favors Granting Discovery Because the Application Does Not Circumvent Foreign Proof-Gathering Restrictions</u>

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Second Circuit precedent "expressly forbid[s] district courts from considering the discoverability of evidence in a foreign proceeding when ruling on a § 1782 application." *In re O'Keeffe*, 650 F. App'x at 85. Additionally, "the mere fact that the discovery sought here might not be obtainable [in the foreign proceeding] does not, by itself, suggest that [an] application is an 'attempt to circumvent foreign proof-gathering restrictions.'" *Id*.

Here, the Application does not "attempt to circumvent" proof-gathering restrictions of the United Kingdom. Applicant is not seeking documents that a foreign court has already prohibited it from obtaining or otherwise acting in bad faith. He seeks discovery that is, on information and belief, locatedin the United States from an entity that is likely to be outside the jurisdictional reach of the courts of the United Kingdom. Acuner Decl. ¶ 20. The third *Intel* factor weighs in favor of granting the Application.

       4.      <u>The Fourth *Intel* Factor Favors Granting Discovery Because the Requests Are Narrowly Tailored and Proportional to the Needs of the Foreign Proceeding</u>

The fourth *Intel* factor favors granting discovery because the Application is narrowly tailored to avoid any undue burden on Standard Chartered and to request only relevant,

11

nonprivileged information. *See* Inns Decl. Ex. 5. "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302.

First, the Requested Discovery is relevant to the anticipated cause of action for recission on the basis of duress. Acuner Decl. ¶ 21. The Requested Discovery is related to Standard Chartered's transmission of payments from Hunan Minmetals to the Three Entities pursuant to sham contracts and invoices. *Id*. Information about these payments will show whether Trubnikov was entitled to the funds and will also shed light on the ultimate uses and destinations of those funds, which Applicant expects will support his arguments that the payments were extracted through duress. *Id*. ¶¶ 22-23. Second, the Requested Discovery would not be unduly burdensome for Standard Chartered to produce, as the types of information and documents requested would be maintained in the normal course of business by and easily accessible to Standard Chartered.[3] Additionally, the scope of the Requested Discovery is targeted to information relevant to the Contemplated U.K. Proceeding. *See* Inns Decl. Ex. 5.

Because the Requested Discovery (1) seeks material documents and information; (2) is limited by scope and date; (3) is maintained or accessible in the normal course of business by Standard Chartered; and (4) is sufficiently specific to allow Standard Chartered to identify and

---

[3] Where discovery requests are found to be overbroad, courts need not deny an application altogether; instead, courts routinely exercise the authority under Federal Rule of Civil Procedure 26 to limit the requests and thus reduce any burden. *See Application of Malev Hungarian Airlines,* 964 F.2d 97, 102 (2d Cir. 1992) ("On remand, we wish to note that the district court can utilize its powers under the Federal Rules of Civil Procedure to lessen significantly the burden of handling this discovery.").

produce the documents and information with minimal burden (*See* Inns Decl. Ex. 5), the Application should be granted.

## CONCLUSION

For the foregoing reasons, Applicant respectfully requests that the Court (1) grant the Application for an Order to Conduct Discovery; (2) enter the Proposed Order attached to the Inns Declaration as Exhibit 6; (3) authorize Applicant, pursuant to Section 1782, to serve the proposed subpoena on Standard Chartered; and (4) grant any and all other relief to Applicant as deemed just and proper.

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By:  /s/ Kristin N. Tahler

Kristin N. Tahler
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Nicholas J. Inns (*pro hac vice* forthcoming)
1300 I Street NW, Suite 900
Washington, D.C. 20001
Telephone:  (202) 538-8000
Facsimile:  (202) 538-8100

*Counsel for Applicant Evgeny Volosov*

Dated: May 28, 2025

13